UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY L.,[1] | ) |
| Plaintiff, | ) No. 20 cv 5184 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony L. ("Plaintiff") appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability benefits under Title II of the Social Security Act. Plaintiff filed a Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security, which the Court construes as a motion for summary judgment, and the Commissioner filed a cross-motion for summary judgment. For the following reasons, Plaintiff's motion [Dkt. 14] is denied, and the Commissioner's cross-motion [Dkt. 21] is affirmed. The decision of the Commissioner is affirmed.

**I.      Background**

This is the third time this case has been appealed to the United States District Court for the Northern District of Illinois, and the second time this case has been before this Court. In its previous opinion, the Court thoroughly discussed the medical and procedural history of the case, and the Court directs the reader to that opinion for the background of this case. *Anthony L. v. Berryhill*, Case No. 17-cv-6608, Dkt. 40 at 1-11 (N.D. Ill. Mar. 26, 2019). This Memorandum Opinion and Order will focus primarily on the proceedings following this Court's most recent remand.

---

[1]   In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

An administrative hearing was held on April 2, 2020. (R. 1409.) On May 22, 2020, ALJ Jessica Inouye denied Plaintiff's claim, finding him not disabled under the Act and therefore ineligible for benefits. (R. 1409-1433.) The ALJ's decision followed the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2005, through his date last insured ("DLI") of December 31, 2009. (R. 1411.) At step two, the ALJ concluded that Plaintiff has the severe impairments of post-operative craniopharyngioma in 1995 without recurrence, but with panhypopituitarism, on replacement therapy; obesity; obstructive sleep apnea; venous insufficiency in the bilateral lower extremities; and bilateral knee osteoarthritis. (R. 1412.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (*Id.*) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: stand/walk two out of eight hours; sit six out of eight hours; no climbing ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; only occasional stooping, kneeling, crouching, and crawling. (R. 1415.) At step four, the ALJ concluded Plaintiff was unable to perform his past relevant work as a restaurant owner. (R. 1430-1431.) At step five, the ALJ found that other jobs in the national economy exist that Plaintiff can perform, considering his age, education, work experience, and RFC. (R. 1431.) These findings led to the ALJ's conclusion that Plaintiff is not disabled as defined by the Social Security Act. (R. 1432.)

## II. Social Security Regulations and Standard of Review

To be eligible for disability insurance benefits, an applicant must prove that he is disabled under the Social Security Act as of his DLI. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). ALJs conduct a sequential five-step inquiry to determine whether a claimant is legally disabled, asking (1) Is the claimant unemployed? (2) Does the claimant have a severe impairment? (3) Does

2

the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal quotations omitted); *Young*, 957 F.2d at 389. The claimant bears the burden of proof at steps one through four. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). At the final step, the burden shifts to the Commissioner; if she shows that the claimant can "perform work that exists in a significant quantity in the national economy," the claimant is not disabled. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

In disability benefits cases, the scope of a court's review is limited to determining whether the Commissioner's final decision adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford*, 227 F.3d at 869. Although the Court's review is deferential, *Steele v. Barnhart*, 290 F.3d 936, 938 (7th Cir. 2002), the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *Id.* at 941 (internal citation and quotations omitted).

### III. Discussion

Plaintiff contends ALJ Inouye reversibly erred by: (1) improperly assessing Plaintiff's

3

statements regarding the intensity, persistence, and limiting effects of his pain and symptoms; and (2) failing to identify evidence that supported Plaintiff's RFC. For the reasons discussed more fully below, the Court rejects Plaintiff's arguments.

### A. The ALJ Adequately Assessed Plaintiff's Subjective Statements

First, Plaintiff contends that the ALJ erred in considering Plaintiff's various activities and their effects on his functional capacity. In analyzing Plaintiff's condition, the ALJ considered Plaintiff's experiences house hunting in Arizona, traveling internationally to Italy and Mexico, spending time day trading, and exercise attempts. (R. 1425-1427.) As for his activities of daily living, the ALJ "considered the claimant's testimony that he does not perform all of these activities for prolonged periods of time," but also noted his testimony "that most of the time, he is sitting in his breakfast room all day in a chair at (sic) TV or going to the computer to check stocks." (R. 1427.) The ALJ concluded that Plaintiff's "ability to perform some of these activities on a regular basis provide support for part of the residual functional capacity conclusion in this decision." (*Id.*) As for travel and house hunting, the ALJ discussed Plaintiff's testimony regarding the nature of his excursions and conceded that "vacations/travel and a disability are not necessarily mutually exclusive, [but] the claimant's decision to go on a vacation and travel tends to suggest that the alleged symptoms and limitations may have been overstated." (*Id.*)

The Court rejects Plaintiff's arguments that the ALJ's consideration of Plaintiff's activities was reversible error. The ALJ considered Plaintiff's testimony regarding the modifications and accommodations Plaintiff required to engage in these activities and did not claim that Plaintiff's travel or activities of daily living were equivalent to full time work. It is not error to consider Plaintiff's activities of daily living, compare them against his subjective statements regarding the intensity, persistence, and limiting effects of his pain and symptoms, and conclude they are not consistent. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess

whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). The Court finds the ALJ's conclusion on this issue was supported by substantial evidence and should be affirmed.

Next, Plaintiff maintains that "[t]he ALJ erred in relying on the treatment that [Plaintiff] received in finding that [Plaintiff's] subjective allegations were not entirely consistent with evidence." (Dkt. 14 at 10.) The ALJ noted that Plaintiff "admitted to benefitting from [knee] injections and having improvement with past injections." (R. 1428.) The ALJ acknowledged Plaintiff's argument that the frequency of injections increased from every 5-6 months to every 2-3 months, but found this only suggested "that the injections were helpful for about 2-3 months" and that "the treatment notes do document some waxing of his knee symptoms, but, on balance, they have been well maintained with steroid and lubricant injections, as evidenced by the lack of documentation of exacerbation of his knee symptoms . . . as well as, (sic) generally intact findings reported on physical examinations." (*Id.*) The ALJ is certainly permitted to consider the effectiveness of treatments in determining whether a claimant is disabled. 20 C.F.R. § 404.1529(c)(3). The ALJ cited several instances in the medical record where Plaintiff had normal findings and reported relief from the injections. While Plaintiff disagrees with the ALJ's interpretation of that evidence – arguing that the relief was temporary and does not necessarily indicate an ability to perform full-time work – the conclusions are supported by substantial evidence in the record and a reasonable mind could find that the evidence supports the ALJ's conclusion. The Court affirms the ALJ's decision here as well.

Finally, Plaintiff asserts "[t]he ALJ erred in finding that [Plaintiff's] subjective allegations were not entirely consistent with evidence based on [Plaintiff's] noncompliance with prescribed treatment." (Dkt. 14 at 12.) The ALJ found Plaintiff's non-compliance with a recommendation he wear compressions socks indicated that his symptoms may not have been as functionally limiting as Plaintiff claimed. (R. 1426.) SSR 16-3 states "if the individual fails to follow prescribed treatment

5

that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Plaintiff states the ALJ erred by not asking Plaintiff about his non-compliance with the compression socks at the administrative hearing or considering reasons why Plaintiff may not have complied with his doctor's recommendations, which is also required by SSR 16-3. However, Plaintiff has not posited any explanation the ALJ may have uncovered through more thorough questioning, and only argues that "the Commissioner cannot know what explanation [Plaintiff] may have provided had the ALJ satisfied her obligation." (Dkt. 23 at 9.) Of course, Plaintiff had an opportunity in this appeal to tell this Court what explanations he might have provided to the ALJ, yet he failed to do so. As such, the Court will not remand on this basis. *See Finney v. Berryhill*, No. 16 C 3815, 2018 WL 1377908 at * 6 (N.D. Ill. March 19, 2018) ("Because plaintiff has not pointed to any evidence which would affect the ALJ's finding on [noncompliance], such as an inability to afford treatment, the Court finds that no error occurred.").[2]

### B. The ALJ Adequately Assessed Plaintiff's RFC

Plaintiff puts forth two primary arguments in support of his contention that the ALJ erred in assessing his RFC. First, Plaintiff claims the postural and exertional limitations in the RFC were not adequately supported. Plaintiff points to the state agency medical consultants' findings that Plaintiff "retained the RFC to sit for a total of six hours in an eight-hour day, to stand and to walk for a total of two hours in an eight-hour day, to frequently lift and to carry ten pounds, and to occasionally lift and to carry up to 20 pounds at one time." (Dkt. 14 at 13 (citing R. 90-91, 103-04).) The ALJ assigned good weight to those opinions, except for the proposed lifting and carrying restrictions; instead, the ALJ found Plaintiff was even more limited in this area, as sedentary work involves lifting no more than 10 pounds at a time. (R. 1415); 20 C.F.R. § 404.1567(a). "Essentially, Plaintiff argues the ALJ

---

[2] Even if this Court were to find that the ALJ erred in her consideration of Plaintiff's compliance with the compression socks, the Court believes it was harmless error and that remanding on this basis would be unlikely to affect the outcome of the case. *See, e.g.*, *Reider v. Astrue*, 2008 WL 2745958, at *14 (N.D. Ill. July 11, 2008).

6

erred by placing more – not fewer – restrictions on Plaintiff's RFC. Again, this is a quizzical argument." *Karla J.B. v. Saul*, No. 19 CV 50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020). The Court agrees with the *Karla J.B.* case and rejects this argument.[3] *See also, Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("[t]here is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.") The sole question before this Court is whether the ALJ's RFC findings are supported by substantial evidence in the record, not whether another conclusion could be supported that Plaintiff would prefer. The remainder of the RFC findings are supported by the medical record as evidenced by the thorough and well-reasoned RFC analysis spanning approximately 15 pages of the ALJ's opinion.

Second, Plaintiff argues that "[t]he ALJ erred in failing to include a limitation that permitted [Plaintiff] to elevate the legs in her assessment of [Plaintiff's] RFC." (Dkt. 14 at 15.) At the administrative hearing, Plaintiff testified he would often elevate his legs onto an ottoman to relieve his knee pain and swelling. (R. 1473-74.) The ALJ found that "there is no evidence to support a medical necessity to elevate his legs during the relevant adjudicative period," because there was no indication in the medical record "that he regularly elevated his legs or did so for a lengthy period during the day or even that elevation was recommended by any physician." (R. 1426.) Plaintiff argues that it was not necessary for a doctor to recommend leg elevation because leg elevation is a common home remedy for edema, which is a malady Plaintiff suffers from. (Dkt. 14 at 16.) While it is error to insist that a doctor must *prescribe* leg elevation to include that limitation in the RFC, *see Dawn T. v. Saul*, 2019 WL 4014240, *10 (N.D. Ill. 2019) "(... [medical expert's] insistence that there must be a 'prescription' for leg elevation seems unrealistic. Is this something that a doctor would issue a written prescription for?"), it is also true that an ALJ does not need to accept leg elevation as a postural

---

[3] The Court also rejects Plaintiff's claim that the ALJ was required to call a Medical Expert if she was going to make any findings regarding Plaintiff's postural and exertional limitations. The decision to call a Medical Expert is discretionary, and in this case there was ample medical evidence supporting the ALJ's findings. *See, e.g.* SSR 18-1p (The decision to call on the services of an ME is always at the ALJ's discretion).

7

limitation when the only evidence in the record is Plaintiff's testimony, *See Michael A. v. Saul*, 2020 WL 1863248, at *4 (N.D. Ill. Apr. 14, 2020) ("[t]he only reference to leg elevation was a passing mention by Plaintiff in his hearing testimony"). The ALJ did not find that Plaintiff required a prescription for leg elevation for that limitation, and it was reasonable for her to conclude that a total lack of reference to leg elevation anywhere in the medical record – even Plaintiff describing his leg elevation to his doctors – indicates that leg elevation is not a necessary postural limitation in this case. In short, the ALJ's finding on this issue is reasonable and should be affirmed.

### IV. Conclusion

Plaintiff's motion [Dkt. 14] is denied, and the Commissioner's cross-motion [Dkt. 21] is affirmed. The decision of the Commissioner is affirmed.

Entered: June 22, 2022

_____
Susan E. Cox,
United States Magistrate Judge